# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| FIDELITY SECURITY LIFE INSURANCE COMPANY,<br><br>    Plaintiff,<br><br> v.<br><br>MARIE ELIZABETH CANTU, a Washington resident, as Beneficiary of the life insurance policy for Timothy David Cantu,<br><br>    Defendant. | CASE NO. 2:22-cv-1482<br><br>ORDER ON THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT |
| MARIE ELIZABETH CANTU, a Washington resident, as Beneficiary of the life insurance policy for Timothy David Cantu,<br><br>    Counter-Claimant,<br><br> v.<br><br>FIDELITY SECURITY LIFE INSURANCE COMPANY,<br><br>    Counter-Defendant. | |

ORDER ON THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT - 1

## 1. INTRODUCTION

This is an insurance coverage dispute. Plaintiff and Counter-Defendant Fidelity Security Life Insurance Company ("Fidelity") pleads two causes of action: first, Fidelity seeks a declaratory judgment stating that it owes no duty of coverage under the life insurance policy that it issued to Timothy Cantu; and second, Fidelity asks the Court to rescind Mr. Cantu's life insurance policy. Defendant and Counter-Claimant Marie Elizabeth Cantu, the policy beneficiary, countersues Fidelity. Mrs. Cantu alleges Fidelity breached its contract with the Cantus by refusing to pay out the policy, and that its acts violated both the Washington Consumer Protection Act and the Washington Insurance Fair Conduct Act.

On cross-motions for partial summary judgment, the parties seek dueling declaratory judgments on Fidelity's obligation to pay out the death benefit under Mr. Cantu's policy. The parties agree that the facts are not in dispute. They maintain that the Court need decide only whether Mr. Cantu misrepresented his medical history on his life insurance application when he wrote that he had not consulted with a physician within the last five years, even though he had consulted with his dentist. Because the Court finds a "physician" is not synonymous with a "dentist," it finds that Mr. Cantu did not misrepresent his medical history on his application and DENIES Fidelity's motion for summary judgment. It also GRANTS Mrs. Cantu's cross-motion for summary judgment on her breach of contract claim as explained below.

## 2. BACKGROUND

This coverage dispute boils down to two questions Timothy Cantu answered on his Fidelity life insurance application on February 16, 2021:

> Have you consulted a *physician* in the last 5 years for anything that has not already been disclosed? Examples may include check-ups, illnesses, surgery or hospitalization.
>
> Has a *physician* recommended any treatment or ordered any diagnostic tests in the last 5 years, excluding tests related to HIV or AIDS? Examples may include Electrocardiograms (ECGs), X-rays or other imaging, blood tests, or other analyses of bodily fluids, tissues, cells, or cellular components.

Dkt. No. 34 at 15 (emphasis added). Mr. Cantu responded "no" to both questions when he completed the application. *Id.* The application did not define the term "physician," *id.* at 12-17, but it contained a clause stating that "any false statement" made on the application would prevent a payout under any policy if it was "made with an actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by [Fidelity]."[1] *Id.* at 17. Fidelity issued Mr. Cantu a $2,000,000 policy that same day. *Id.* at 5.

Mr. Cantu visited his dentist, Aaron Wellborn, Doctor of Dental Medicine, at least four times within the five years before completing his Fidelity life insurance application. Dkt. No. 32-1 a 5-8. According to Wellborn's clinical notes, Mr. Cantu's tongue was a topic of conversation on multiple visits, and he referred Mr. Cantu to an oral surgeon several times. *Id.* On May 29, 2018, Wellborn referred Cantu to an oral surgeon because a sore remained present on his tongue for about a year. *Id.* at

---

[1] This language tracks with RCW 48.18.090, which governs rescission of certain life insurance policies.

ORDER ON THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT - 3

6. Wellborn made the same referral six months later, noting that the sore appeared to have gotten bigger. *Id.* In May and December 2019, Wellborn made similar notes and referrals for a biopsy of the lesion on Mr. Cantu's tongue. *Id.* at 7. At the time, Mr. Cantu said the sore did not bother him and he believed it would go away soon. *Id.*

On February 26, 2021, ten days after he submitted his Fidelity life insurance application, Mr. Cantu reached out to Wellborn's office for referral information for an oral surgeon. *Id.* at 10. Tragically, Mr. Cantu died of tongue cancer eight months later. Dkt. No. 32 at 2.

Mrs. Cantu tendered a claim for the Policy's benefits on November 9, 2021, Dkt. No. 32-2 at 2, but Fidelity refused to pay, arguing Mr. Cantu had failed to disclose his dentist's recommendations about consulting an oral surgeon and that this was a "misrepresentation[ ] [that] materially affected the acceptance of risk and/or hazard assumed by Fidelity[.]" Dkt. No. 40 at 5.

### 3.    DISCUSSION

#### 3.1    Standard of review.

"[S]ummary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Frlekin v. Apple, Inc.*, 979 F.3d 639, 643 (9th Cir. 2020) (internal citation omitted). A dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party," and a fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a summary judgment motion, courts must view the evidence "'in the

light most favorable to the non-moving party.'" *Barnes v. Chase Home Fin., LLC*, 934 F.3d 901, 906 (9th Cir. 2019) (internal citation omitted). "[S]ummary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Summary judgment should also be granted where there is a "complete failure of proof concerning an essential element of the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**3.2   Because Mr. Cantu did not misrepresent his medical history on his written insurance application, Fidelity's motion to rescind his policy is denied.**

Fidelity contends that Mr. Cantu misrepresented his health history on his insurance application when he denied consulting a physician despite meeting with his dentist—Wellborn—about the sores on his tongue and receiving a referral to an oral surgeon. Mrs. Cantu refutes this claim, arguing a dentist is different from a physician, and thus that her husband "truthfully and accurately answered the questions *that Fidelity asked*" on the application. Dkt. No. 38 at 1 (emphasis in the original). The insurance application did not define "physician," so the Court must construe its meaning to resolve this dispute.

"Insurance policies are to be construed as contracts, and interpretation is a matter of law." *Washington Pub. Util. Districts' Utilities Sys. v. Pub. Util. Dist. No. 1 of Clallam Cnty.*, 771 P.2d 701, 706 (Wash. 1989). "[W]hen determining the meaning of undefined terms in an insurance policy, [courts] look to the expectations of the average insurance purchaser," *McLaughlin v. Travelers Com. Ins. Co.*, 476

P.3d 1032, 1037 (Wash. 2020). Accordingly, "[u]ndefined terms . . . must be given their 'plain, ordinary, and popular' meaning." *Kitsap Cnty. v. Allstate Ins. Co.*, 964 P.2d 1173, 1178 (Wash. 1998) (quoting *Boeing Co. v. Aetna Cas. & Sur. Co.*, 784 P.2d 507, 511 (Wash. 1990) (en banc)). "To determine the ordinary meaning of undefined terms, courts may look to standard English dictionaries," *id.*, with *Webster's Third New International Dictionary* being a tried-and-true authority in insurance contract disputes, *see, e.g., Panorama Vill. Condo. Owners Ass'n Bd. of Directors v. Allstate Ins. Co.,* 26 P.3d 910, 915 (Wash. 2001). Rather than apply every possible dictionary definition to the disputed term, courts should limit themselves to the definition options that make sense within the context of the insurance policy. *See Matthews v. Penn-Am. Ins. Co.*, 25 P.3d 451, 453 (Wash. Ct. App. 2001) (interpreting the undefined term "family," and cautioning against using "all the possible dictionary definitions" that would render the language of the policy redundant).

Webster's Third New International Dictionary includes three entries for the word "physician":

> 1: a person skilled in the art of healing: one duly authorized to treat disease: a doctor of medicine – often distinguished from *surgeon.*
> 2: one who restores (as a troubled spirit or the body politic): one exerting a remedial or salutary influence.
> 3: *obs*: NATURAL PHILOSOPHER, PHYSICIST.

Webster's Third New International Dictionary 1707 (2021) (emphasis in original).

The second and third entries are clearly not on point if read in the context of Mr. Cantu's insurance application. The second definition broadly references "one who restores," which would not make sense in the context of a medical history

ORDER ON THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT - 6

questionnaire, and the third definition refers to an obsolete term that couldn't possibly describe the ordinary meaning of physician in modern times. The first definition makes the most sense here. There are multiple elements to the definition—"a person skilled in the art of healing" and "one duly authorized to treat disease" are broad, but "a doctor of medicine – often distinguished from *surgeon*" is narrower.

In contrast, Webster's defines a dentist as "one whose profession it is to treat diseases of the teeth and associated tissues and to make and insert replacements for lost or damaged parts–called also *dental surgeon*." Webster's Third New International Dictionary 603 (2021) (emphasis in original). Thus, a "physician," as the term is used in Fidelity's insurance application could be interpreted broadly to include dentists or narrowly to exclude them. Both Fidelity and Mrs. Cantu argue for their preferred definition from their preferred sources, but "simply surveying dictionary definitions" does not answer the question here, as the parties show that there is a reasonable basis to read the disputed term both ways. *Matthews,* 25 P.3d at 454. Because there is a range of "linguistically permissible meanings," the Court turns to the "contextual meaning" of the word as it is used in the application. *Mains Farm Homeowners Ass'n v. Worthington*, 854 P.2d 1072, 1075 (Wash. 1993) (quoting Robert D. Brussack, *Group Homes, Families, and Meaning in the Law of Subdivision Covenants*, 16 Ga.L.Rev. 33, 42, 55 (1981–1982)); *see Black v. Nat'l Merit Ins. Co.,* 226 P.3d 175, 179 (Wash. Ct. App. 2010) ("In the absence of anything in the context of a contract clearly indicating a contrary intent, when the same word is used in different parts of the contract, it will be presumed to be used in the same

ORDER ON THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT - 7

sense throughout the contract." (quoting *Holter v. Nat'l Union Fire Ins. Co.*, 459 P.2d 61, 64 (Wash. Ct. App. 1969)).

Here, the word "physician" is used seven times in the health history section of the application. Dkt. No. 34 at 14-15. It first appears in a question asking, "Do you have a regular physician?" *Id.* at 14. And it appears next in this inquiry: "Have you been diagnosed, treated, hospitalized, or prescribed medication by a physician for any of the following in the last 10 years?" *Id.* This question is followed by a long list of medical conditions that do not directly implicate dental care in any way (e.g., "heart disorder[s]," "diabetes, thyroid disorder, elevated cholesterol or other endocrine or metabolic disorder"). *See id.* "Physician" is next used on the application in the questions at issue in this motion. Next, the application asks: "Have you ever been diagnosed or treated by a *physician* for AIDS, ARC, and/or HIV infection?"; "Have you ever been diagnosed or treated by a *physician* for AIDS, ARC, and/or HIV infection?"; "Has a biological parent or sibling been diagnosed by a *physician* with diabetes, cancer, heart disease, Huntington's Disease, or Lynch Syndrome prior to the age of 60?" *Id.* at 15 (emphasis added).

Applying this context to the dictionary definition, the Court concludes the average person purchasing insurance would understand the word "physician," as it is used in the application, as referring to a medical doctor, not a dentist. Substituting the word "dentist" for "physician" above makes this understanding plain and highlights the flaw in Fidelity's reading of the application, as a dentist would typically play no role in treating AIDS/HIV, heart conditions, diabetes, or cancer. That role is reserved for medical doctors or "physicians."

Fidelity will quibble with this reading of the application, but there is no dispute that "physician" is at least "fairly susceptible" to two interpretations. *McLaughlin*, 476 P.3d at 1037. When this happens, courts must adopt the construction that is "most favorable to the insured." *Id.* And so it goes here, as any ambiguity in the application is interpreted in favor of Mrs. Cantu.

Because there are multiple reasonable definitions of a physician the Court interprets the term in the sense most favorable to Mrs. Cantu—a doctor of medicine, which is not synonymous with a dentist. As a result, the Court finds Mr. Cantu did not provide false responses on his Fidelity life insurance application and will not rescind the contract.

Given that the Court relies on the dictionary definition to interpret the disputed term, it need not rule on whether the fact that Fidelity changed its application to replace the word physician with the term "medical professional" may be considered under Rule of Evidence 407.

### 3.3 Mrs. Cantu's motion for summary judgment on her breach of contract claim is granted.

Mrs. Cantu moves for summary judgment on her breach of contract claim. Fidelity's opposition rest solely on its claim that the "Policy should … be declared void *ab initio* based on Mr. Cantu's material misrepresentations in the Application that adversely affected Fidelity's risk exposure." Dkt. 40 at 15. But the Court has rejected this claim, as explained above. Fidelity does not otherwise dispute whether a contract was formed, whether Mrs. Cantu is a proper beneficiary, its duty to pay under the policy, or that Mrs. Cantu has suffered damages.

ORDER ON THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT - 9

Because the Court finds that Mr. Cantu did not make material misrepresentations on his insurance application, and because Fidelity raises no other defenses to Mrs. Cantu's contract claims, the Court GRANTS Mrs. Cantu's motion for partial summary judgment, finding that Fidelity is liable for breach of contract. The Court reserves ruling on the calculation of damages until trial.

## 4. CONCLUSION

In sum, the Court DENIES Fidelity's motion for summary judgment, Dkt. No. 31, and GRANTS Mrs. Cantu's cross-motion for summary judgment, Dkt. No. 38.

Dated this 30th day of September, 2024.

Jamal N. Whitehead
United States District Judge